IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| WILLIAM L. EDISON TRUST NUMBER ONE (third restatement) U/A May 4, 2005, by its Trustee WILLIAM L. EDISON; WILLIAM HENSLEY; JANET WHITE; CHARLES R. WHITE; and McCULLOUGH DEVELOPMENT, INC., | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 10-cv-01159-RDR-KGS |
| R.D. (SPIKE) PATTILLO III; and RUSSELL H. TRIPPET, | ) ) ) | |
| Defendants. | ) ) ) | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION AND/OR IMPROPER VENUE,
OR, IN THE ALTERNATIVE, FOR TRANSFER**

The Plaintiffs (collectively referred to as the "Kansas Lenders"[1]) submit this memorandum in opposition to the Defendants' Motion to Dismiss. For the following reasons, the defendants' motion should be denied in its entirety.

**I.   SUMMARY OF ARGUMENT.**

Defendant Russell Trippet called William Edison in Kansas to solicit a loan for a real estate venture called The Homestead, a new senior living facility in Waco, Texas. After much oral and written negotiation among the parties, the Kansas Lenders loaned $800,000 for development of The Homestead. In exchange, the Defendants each signed personal guaranties in favor of the Kansas Lenders that required payment by the defendants in Wichita, Kansas. The

---

[1] Plaintiffs Janet White and Charles White constitute a single lender.

note[2] underlying the guaranties, which also required payment in Wichita, Kansas, and pursuant to which the Defendants sent multiple interest payments to the Kansas Lenders, has matured and the Defendants have not paid.  The Defendants' nonpayment places them in material breach of the personal guaranties.  The Kansas Lenders resorted to litigation to collect the $800,000, plus interest, attorneys' fees, and costs owed to them.

The Defendants ask the Court to dismiss this action for lack of personal jurisdiction and/or improper venue.  They alternatively ask the Court to transfer the case to Texas.

The Court has personal jurisdiction because the breach of contract claim against the Defendants is related to and arises out of the Defendants' purposeful contacts with Kansas.  The Kansas long-arm statute is satisfied based on the Defendants' entry into contracts (the two guaranties and the note) with Kansas residents requiring performance at least in part in Kansas.  The Defendants have "minimum contacts" with Kansas based on, among other contacts, the Defendants' solicitation of money from Kansas residents, the copious communications sent to Kansas throughout the development of The Homestead, and the interest payments sent by the Defendants to the Kansas Lenders as required by the note.

Venue is proper in Kansas because a substantial part of the events and omissions giving rise to the Kansas Lenders' claim occurred in Kansas.  Transfer is unnecessary because the Defendants cannot demonstrate that all parties would be conveniently served by a transfer to Texas and because it is not in the interests of justice to do so.

---

[2] The borrower on the note is First Bale LLC, the entity created by the Defendants to develop The Homestead.  This suit is only against the two individual Defendants based on a failure to honor their personal guaranties.

II.    **STATEMENT OF FACTS ESTABLISHING PERSONAL JURISDICTION AND VENUE.**

Personal jurisdiction and venue present fact-intensive inquiries.  The Kansas Lenders offer the following facts, supported by affidavit and exhibits, in support of their arguments.

1.    In 2006, Defendant Trippet called Plaintiff Edison in Kansas to ask if Edison might have an interest in financing the construction of a new senior living facility in Waco, Texas, called The Homestead.  [Edison Aff. ¶ 2].

2.    Trippet knew Edison from prior professional relationships including a partnership between Trippet and Edison on another unrelated property in Waco, Texas.  [Edison Aff. ¶ 3].

3.    Trippet knew that Edison had successfully gathered investors for other real estate projects.  Trippet initiated the conversation in hopes that Edison could gather other Kansas lenders to finance The Homestead.  [Edison Aff. ¶ 3].

4.    Throughout the development of The Homestead, Trippet called Edison by telephone frequently and sent multiple emails and letters.  Edison is a Kansas resident and received Trippet's calls and emails in Kansas.  [Edison Aff. ¶ 1, 5].

5.    In June 2006, Trippet faxed a 35-page informational document entitled "The Homestead" to Edison in Kansas, attached hereto as Exhibit A.  The document, which featured plans, drawings, budgets, photos, and comparable properties, was intended to educate, entice, and solicit Edison's financial participation in the project.  [Edison Aff. ¶ 4].

6.    From September 2006 through March 2010, the Defendants sent at least 42 emails, letters, or faxes to the Kansas Lenders in Kansas.  The correspondence relates to the Kansas Lenders' involvement in The Homestead and is attached as Exhibit B.  Some highlights from Exhibit B include:

      a.     An email from Trippet soliciting Edison to loan money for The Homestead and inviting Edison and a guest to Waco for a site tour.  [Page 1].

      b.     A six-page letter from Defendant Pattillo regarding "Equity Financing for The Homestead," a document outlining the terms of a proposed deal whereby the Kansas Lenders would loan money in exchange for a 20% ownership interest in First Bale LLC.  [Pages 11-16].

      c.     An email exchange between Trippet and Edison regarding how to structure the deal.  [Pages 17-19].

      d.     A letter from Pattillo to Edison and plaintiff Hensley including certified copies of unanimous consents for First Bale LLC.  [Page 30].

      e.     A two-page letter from Pattillo to Edison and Hensley regarding how to salvage the project and asking for more money.  [Pages 53-54].

      f.     Emails explicitly or implicitly asking for more money from the Kansas Lenders to keep the project alive.  [Pages 63-72].

      g.     Pro formas provided by the Defendants to keep the Kansas Lenders informed as to financial matters.  [Pages 57-62; 76-96].

7.     The Kansas Lenders each sent a $200,000 loan payment to the Defendants in Texas.  [Edison Aff. ¶ 8].

8.     On January 18, 2007, the Defendants signed a note on behalf of First Bale LLC and personal guaranties.  The guaranties call for payment to be made to the Kansas Lenders at Edison Investments, P.O. Box 780128, Wichita, Sedgwick County, KS 67278.  The note likewise calls for payment to be made to the Kansas Lenders at Edison Investments, P.O. Box 780128,

Wichita, Sedgwick County, KS 67278.   These documents were attached to the Petition as Exhibits A, B, and C.

9.      From January 2007 through January 2009, the Defendants sent at least 14 interest payments of $1,500 to each of the Kansas Lenders.   [Edison Aff. ¶ 9].   Each payment was accompanied by a memo, and 14 of the memos sent to Edison are attached as Exhibit C.  Page 14 of Exhibit C displays a copy of a check sent from Texas to Hensley.

10.      As it became apparent that The Homestead was not leasing, the Defendants solicited more money from the Kansas Lenders to salvage the project.  [Edison Aff. ¶ 10].

## III.   ARGUMENTS AND AUTHORITIES.

### A.   Kansas Courts May Exercise Personal Jurisdiction Over The Defendants.

In determining whether this Court has personal jurisdiction, a two-step analysis is necessary.  *Carrothers Constr. Co. v. Quality Serv. & Supply, Inc.*, 586 F. Supp. 134, 135 (D. Kan. 1984).  First, the court must determine whether it has jurisdiction over the defendant under the Kansas long-arm statute, K.S.A. 60-308(b)(1).  *Id.*  If it does, then the court must determine whether the defendant has sufficient minimum contacts with the forum state to comport with the constitutional guarantee of due process.  *Id.*

When, as here, personal jurisdiction is controverted, the plaintiff need only make a *prima facie* showing that the two-step analysis is satisfied.  *Thermal Insulation Systems v. Ark-Seal Corp.*, 508 F. Supp. 434, 437 (D. Kan. 1980).  The court may consider the affidavits and other documentary evidence submitted by the parties in determining whether a *prima facie* showing has been made.  *Id*.  Factual doubts are resolved in favor of the plaintiff.  *Id*.  The Defendants are subject to Kansas jurisdiction for the following reasons.

### i.   This Court Has Long-Arm Jurisdiction Under K.S.A. 60-308(b)(1)(E).

K.S.A. § 60-308(b)(1)(E) provides that a person submits to a Kansas court's jurisdiction by "entering into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state."  Sometimes termed the "single act statute," this provision allows the court to exercise personal jurisdiction over a nonresident when the ***only*** ground is a contract with a resident to be partially performed in the forum.  *Oxford Transp. Servs., Inc. v. MAB Refrigerated Transport, Inc.,* 792 F. Supp. 710, 712 (D. Kan. 1992).  The Defendants committed the requisite "single act" by entering into a contract with Kansas residents to be performed (i.e., payment received) in Kansas.  The long-arm statute is alternatively satisfied because the Kansas Lenders performed by sending the Defendants money from Kansas.  *See Oxford Transp. Servs., Inc. v. MAB Refrigerated Transport, Inc.*, 792 F.Supp. 710, 712 (D. Kan. 1992) (part performance within the forum is recognized when the resident has paid funds to the nonresident).

But the Defendants argue that "[n]othing in the contracts at issue required the Defendants to perform any of their obligations in Kansas."  Such an argument ignores the clear language of the guaranties obligating the Defendants to "pay, when due or declared due, the Guaranteed Indebtedness to Lender at Lender's Mailing Address" in Wichita, Kansas.[3]  [Petition, Exhibits B and C, ¶ 1].

The Defendants assert that "performance" was to occur in Texas because payment would be sent from Texas.  Such an assertion is wholly inconsistent with Kansas law, which squarely holds that the mere payment of funds to the resident within the forum constitutes performance by

---

[3] Not only does the contract require the Defendants to perform their obligations in Kansas, they actually performed (partially) their obligations in Kansas by sending multiple interest payments to each of the Kansas Lenders.

the nonresident. *Rusty Eck Ford-Mercury Corp. v. Am. Custom Coachworks, Ltd.*, 184 F. Supp. 2d 1138, 1142 (D. Kan. 2002). In *Rusty Eck*, all it took to meet the long-arm statute was an affidavit from the plaintiff stating that a contract between plaintiff and defendant was formed and that under the contract, the non-Kansas defendants were to make payments to plaintiff's offices in Kansas. *Id.*

*Rusty Eck* is no anomaly. In *Cont'l Am. Corp. v. Camera Controls Corp.*, 692 F.2d 1309 (10th Cir. 1982), the out-of-state defendant made two partial payments that were received in Wichita. These two payments, along with the receipt of 13 payments in Wichita after the action was commenced, provided proof that the parties agreed some performance would be rendered in the forum state and was sufficient to establish long-arm jurisdiction under (b)(1)(E). *Id.* at 1312.

The Defendants also make the unpersuasive argument that because they never stepped foot in Kansas, the Court cannot exercise personal jurisdiction. Not so. In *Slawson v. Hair*, 716 F. Supp. 1373 (D. Kan. 1989), the court reasoned that the enactment of § 60-308(b)(1)(E) represents the Kansas legislature's "obvious effort to broaden the scope of personal jurisdiction to include those instances where defendants have had no physical presence in Kansas." *Id.* at 1376. Accordingly, for jurisdiction to exist pursuant to the "contract" provision of the Kansas long-arm statute, defendants need not physically enter the forum state. *See id.*

At any rate, the long-arm statute is liberally construed to reflect the policy of the state to assert jurisdiction over nonresident defendants to the extent permitted by the due process clause

of the fourteenth amendment.[4]  *Misco-United Supply, Inc. v. Richards of Rockford, Inc.*, 215 Kan. 849, 850, 528 P.2d 1248 (1974).  The long-arm statute is easily satisfied because the Defendants expressly obligated themselves to perform a contractual obligation in Kansas.

> ### ii.     The Defendants' Due Process Rights Are Not Violated By The Court Exercising Jurisdiction Over Them.

The Tenth Circuit has endorsed a three-prong analysis when considering due process in the context of personal jurisdiction.  *See Rambo v. American Southern Insurance Co.*, 839 F.2d 1415, 1419 n.6 (10th Cir. 1988).  First, the defendant must have minimum contacts with the forum state.  Second, the defendant must "purposefully [avail itself] of the privilege of conducting activities within the forum State."  *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).  Third, the exercise of jurisdiction over the defendant must be reasonable.

The facts of the instant case bear a striking resemblance to those in *Serrano, Inc. v. SLM Int'l*, 1994 U.S. Dist. LEXIS 2038 (D. Kan. Feb. 18, 1994), a case that found jurisdiction over the non-resident defendant.  As in this case, the defendant in *Serrano*:  (1) placed a phone call to a Kansas resident initiating a discussion that eventually led to a contract with the Kansas resident; (2) signed the contract outside of Kansas only after the contract had been agreed to by the plaintiff in Kansas; (3) made numerous communications related to the contract by mail, fax, and phone to the plaintiff in Kansas; and (4) agreed to perform at least part of the contract in Kansas. *Id.* at *13-14.  The only factual difference was that the contract in *Serrano* selected Kansas law,

---

[4] In fact, K.S.A. § 60-308(b)(1) has been amended effective July 1, 2010 to add a new subsection (L) permitting the exercise of jurisdiction over any non-resident "having contact with this state which would support jurisdiction consistent with the constitutions of the United States and of this state."  *See* 2010 H.B. 2656 § 153.  This amendment in effect renders the above analysis moot. As a procedural statute, the Defendants can be re-served any time after July 1, 2010 to effect service under the amended statute based upon their minimum contacts as discussed below. *See Scott v. Hall*, 203 Kan. 331, 335, 454 P.2d 449, 453 (1969).  Thus, even if the Defendants had not entered into a contract to be performed in whole or in part in Kansas, the remedy here would be to permit service under K.S.A. § 60-308(b)(1)(L) after July 1.

while in this case the parties contractually selected Texas law.  The *Serrano* court concluded
"that asserting jurisdiction over the defendant is consistent with the principles of fourteenth
amendment due process.  [Defendant] had minimum contacts with the state of Kansas, and these
contacts were the result of and pursuant to its decision to enter into a contract with a Kansas
corporation to be partially performed in Kansas."  *Id.* at 14.  The factual similarities between
*Serrano* and the instant case support this Court's finding of personal jurisdiction in this case.

**a.      The Defendants Have Minimum Contacts With Kansas.**

The Defendants have extensive contacts with Kansas related to The Homestead contracts.
A defendant must have sufficient contacts with the forum state such that the suit "does not offend
'traditional notions of fair play and substantial justice.'"  *World-Wide Volkswagen Corp. v.
Woodson,* 444 U.S. 286, 293 (1980) (quoting *International Shoe,* 326 U.S. at 316).   When
specific jurisdiction is based upon a contractual dispute, as here, the court must evaluate "prior
negotiations and contemplated future consequences, along with the terms of the contract and the
parties' actual course of dealing … in determining whether the defendant purposefully
established minimum contacts with the forum."  *Burger King Corp. v. Rudzewicz,* 471 U.S. 462,
479 (1985).

The Defendants mistakenly argue that their "only connection with the forum state is the
alleged failure to make a payment in that state."  That argument ignores reality because the
Defendants have multiple contacts with Kansas related to the contracts beyond mere
nonpayment.  It is disingenuous for the Defendants to derive economic benefits from business
dealings with Kansas residents while trying to disclaim any connection with Kansas.

The facts establish that Defendant Trippet initiated a discussion with Plaintiff Edison that
resulted in the formation of a contract between the Defendants and the Kansas Lenders.  The

9

loan was sent from Kansas by the Kansas residents.   After the contract was signed, the Defendants sent multiple interest payments to the Kansas Lenders as required under the contract.[5]  The parties contemplated performance in Kansas, and their course of performance shows that at least partial performance occurred in Kansas.   It simply cannot be said that the Defendants lack minimum contacts with Kansas.

Defendants' reliance on *Green Country Crude, Inc. v. Avant Petroleum, Inc.*, 648 F. Supp. 1443 (D. Kan. 1986), is misplaced.  In *Green Country*, the court held that the exercise of personal jurisdiction in Kansas would be unconstitutional where the defendant's **only** contacts were mailing contract documents to a Kansas company and calling Kansas with regard to a contract for the delivery of oil.  *Id.* at 1449.  The contract was negotiated in Texas, had a Texas choice of law provision, and called for delivery and payment to be made in Oklahoma.  *Id.* *Green Country* can easily be distinguished because the Kansas contacts in this case are significantly more substantial than those in *Green Country*.

*Misco-United Supply, Inc. v. Richards of Rockford, Inc.*, 215 Kan. 849, 528 P.2d 1248 (1974), also cited by the Defendants as a case finding no personal jurisdiction, is equally distinguishable because the defendant's **only** Kansas contact related to the dispute was a single telephone call defendant placed to plaintiff in Wichita, in addition to which "plaintiff mailed defendant a unilateral invoice stating that place of payment was to be at Wichita."  *Id.* at 854. The plaintiff "merely acted as a clearing-house for what was essentially an out-of-state transaction."  *Id.*  The Kansas Supreme Court determined that due process demanded "more

---

[5] Paying funds into a forum state has also been considered a relevant contact not only for long-arm jurisdiction but also for the due process analysis.  *Benton v. Cameco Corp.*, 375 F.3d 1070, 1076-77 (10th Cir. 2004) *cert. denied*, 544 U.S. 974 (2005); *see also Cont'l Am. Corp. v. Camera Controls Corp.*, 692 F.2d 1309, 1312 (10th Cir. 1982).

substantial and voluntary contacts" with the forum.  *Id.*  Here, the Defendants have significantly more contacts with Kansas than the defendant in *Misco-United*.

The Defendants have more than sufficient contacts with Kansas such that exercise of jurisdiction would not violate traditional notions of fair play and substantial justice.

> **b.    The Defendants Purposefully Availed Themselves Of The Privilege Of Conducting Activities Within Kansas.**

The purposeful availment requirement "ensures that [a defendant] will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts or of the 'unilateral activity of another party or a third person.'"  *Burger King*, 471 U.S. at 474-75. "Purposeful availment analysis turns upon whether the defendant's contacts are attributable to his own actions or solely to the actions of the plaintiff . . . . [and generally] requires . . . affirmative conduct by the defendant which allows or promotes the transaction of business within the forum state."  *Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1420 (10th Cir. 1988).

Here, the Defendants directed their actions at Kansas residents.  They voluntarily initiated a discussion with a Kansas resident regarding the financing of a real estate project.  When the project was on the brink of failure, the Defendants solicited further money from the Kansas Lenders.  Throughout the process, the Defendants were in continual voluntary contact by phone, email, fax, or letter with Kansas residents.  It simply cannot be said that the Defendants' contacts with Kansas are random, fortuitous, or attenuated; instead, the contacts were purposeful and affirmative.

The court in *Rusty Eck* stated that "when a party chooses to enter into a contract with a Kansas corporation, the subsequent contacts cannot be said to be "random, fortuitous, or attenuated."  184 F.Supp.2d at 1143 (citing *Marketing Group, Inc. v. Success Dev. Int'l, Inc.*, 41

F. Supp. 2d 1241, 1244 (D. Kan. 1999) (holding that the defendant had minimum contacts with Kansas because it chose to enter into a contract with the plaintiff that was to be performed, at least in part, in Kansas and then the defendant continued to be in contact with the plaintiff regarding the contract)).  Kansas law is clear:  seeking out a Kansas resident, forming a contract with the resident, and maintaining contact with the resident subjects the non-resident to jurisdiction.  That is exactly what happened in this case.

When the Defendants' course of conduct is viewed as a whole, it can fairly be said that the Defendants purposely availed themselves of the privilege of conducting activities within the forum State.  The agreement between the parties in this case was the specific type of business transaction that the Defendants knowingly solicited.  Moreover, it is clear that the Defendants expected the contract to be performed in Kansas.  It was certainly foreseeable that a breach of this agreement would cause damage to the Kansas Lenders in Kansas and, given their substantial contact with the Kansas Lenders, the Defendants could have reasonably anticipated being called to account in Kansas for a breach of the agreement.  *See Continental*, 692 F.2d at 1314 (reasoning that a defendant that ceases to pay on a contract with a Kansas resident "should certainly have foreseen the possibility of being haled into court in Kansas.").

When a nonresident has purposefully directed its activities toward the resident plaintiff, as here, the defendant must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 427 (1984).  The Defendants have failed to show that requiring them to defend a lawsuit in Kansas would be unreasonable.  The Defendants could have negotiated a forum selection clause naming Texas as the exclusive forum for dispute resolution, but they did

not.  They purposefully availed themselves to Kansas in the manners described above and the

Court may exercise personal jurisdiction without offending due process.

<strong>c.      The Exercise Of Jurisdiction Is Reasonable.</strong>

It must be "reasonable, in the context of our federal system of government, to require the

[defendant] to defend the particular [diversity] suit which is brought [in the federal district court

of the forum state]."  *International Shoe*, 326 U.S. at 317.  In making the reasonableness inquiry,

the court must consider several factors, including:

> the burden on the defendant, the interests of the forum state, and
> the plaintiff's interest in obtaining relief.  It must also weigh in its
> determination 'the interstate judicial system's interest in obtaining
> the most efficient resolution of controversies; and the shared
> interest of the several states in furthering fundamental substantive
> social policies.'

*Asahi Metal Industry Co. v. Superior Court,* 480 U.S. 102, 113 (1987) (quoting *World-Wide*

*Volkswagen,* 444 U.S. at 292).  If a defendant's actions cause foreseeable injuries in another

state, it is, "at the very least, presumptively reasonable for [the defendant] to be called to account

there for such injuries." *Burger King,* 471 U.S. at 480.

Here, the Defendants' acts and omissions caused foreseeable economic injuries to the

Kansas Lenders.  Accordingly, it is presumptively reasonable for the Defendants to be sued in

Kansas.  Applying the *Asahi* factors, the Defendants live in Texas but "[d]efending a suit in a

foreign jurisdiction is not as burdensome as in the past."  *Continental*, 692 F.2d at 1314 (citing

*Hanson v. Denckla*, 357 U.S. 235, 250-51 (1958)).  Further, Kansas has a strong interest in

protecting its residents from non-residents who fail to pay money contractually owed to Kansas

residents.  The Kansas Lenders have a strong interest in obtaining relief because they are

contractually owed money and have sought judicial assistance to collect.  This contract dispute

can be efficiently resolved in Kansas.  There is no indication that a resolution of this claim in

13

Kansas will have any effect on Texas' state social policies.  In sum, it is not unreasonable for the Kansas court to exercise personal jurisdiction over the Defendants.

The Defendants' suggestion that this Court's assumption of jurisdiction would offend due process is futile in light of the extensive contacts the Defendants have with Kansas related to The Homestead contracts.  Because the Kansas Lenders have made a *prima facie* showing of personal jurisdiction, the Defendants must present a "compelling case demonstrating that the presence of some other considerations would render jurisdiction unreasonable." *Value Chain Solutions, LLC v. Quality One Wireless, LLC*, 2010 U.S. Dist. LEXIS 38709, at *17 (D. Kan. Apr. 20, 2010). Defendants have not made such a showing; therefore, the Court must deny the Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2).

### B.   Venue Is Proper In Kansas.

When faced with a motion to dismiss for improper venue, "[t]he court must decide whether the forum activities played a substantial role in the circumstances leading up to the plaintiff's claim."  *Andrean v. Secretary of the United States Army*, 840 F.Supp. 1414, 1422 (D. Kan. 1993).  "The forum activities must have been events significant to the plaintiff's claims." *Wempe v. Sunrise Med. HHG, Inc.*, 61 F. Supp. 2d 1165, 1173 (D. Kan. 1999).

While it is true that some of the events related to this lawsuit occurred in Texas, it is also true that "[a] substantial part of the events may have occurred in more than one district, and venue may be proper even if contacts with another district were more substantial." *Andrean*, 840 F.Supp. at 1422-23; *Merchants Nat. Bank v. SafraBank*, 776 F.Supp. 538, 541 (D. Kan. 1991). Put another way, the federal venue statute "does not posit a single appropriate district for venue; venue may be proper in any of a number of districts." *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995); *see also Wempe v. Sunrise Med. HHG, Inc.*, 61 F. Supp. 2d 1165, 1173 (D. Kan.

1999) (finding venue proper in Kansas even though lawsuit-related activities in Texas may have been more substantial).

In this case, activities in Kansas played a substantial role in the circumstances leading up to the Kansas Lenders' claims.  The Kansas Lenders were solicited <u>in Kansas</u> to loan money. They collectively sent $800,000 <u>from Kansas</u>.  They received a great deal of correspondence regarding the project <u>in Kansas</u> both before and during the project's development.  The loan documents were revised and negotiated by the Kansas Lenders <u>in Kansas</u>.  Once executed by the Defendants, copies of the loan documents were received <u>in Kansas</u>.  Interest payments were received and deposited <u>in Kansas</u>.  *See Rusty Eck*, 184 F. Supp. 2d at 1145 (noting that the place where payment is received is relevant for establishing venue under 28 U.S.C. § 1391(a)(2)).  The place for payment on the note and the guaranties is <u>Kansas</u>.  Once the project was in jeopardy, more correspondence and solicitation for further loans were received <u>in Kansas</u>.  The economic injury resulting from the Defendants' nonpayment is being felt <u>in Kansas</u>.

The state of Kansas clearly has substantial contacts with the Kansas Lenders' claims. While venue would surely be proper in Texas, it is also proper in the District of Kansas because a "substantial part of the events or omissions giving rise" to the Kansas Lenders' claim occurred in Kansas.

C.    **Transfer Is Unnecessary.**

The Defendants alternatively request a transfer to the Western District of Texas, Waco Division, pursuant to 28 U.S.C. § 1404(a), which allows the court to transfer a civil action to another district or division where the case might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice, . . ."  There is no basis for transfer because although transfer to Texas might be convenient for the Defendants, it would merely shift the

inconvenience to the Kansas Lenders who selected Kansas as the forum for resolution of this dispute.  The Defendants have simply not demonstrated the prejudice that would befall them by litigating in Kansas.

The burden of proving that the existing forum is inconvenient lies with the moving party. *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992).  The burden is significant in light of the deference given to a plaintiff's choice of venue.  Indeed, the plaintiff's forum choice receives "great weight" and "should rarely be disturbed." *Id.*; *Value Chain Solutions, LLC v. Quality One Wireless, LLC*, 2010 U.S. Dist. LEXIS 38709, at *21 (D. Kan. Apr. 20, 2010).  The Defendants have not satisfied their burden.  Moreover, "[m]erely shifting the inconvenience from one side to the other . . . is not a permissible justification for a change of venue." *Scheidt*, 956 F.2d at 966; *see also*, *Lodgistix, Inc. v. Tollman-Hundley Hotels Corp.*, 1991 U.S. Dist. LEXIS 16025, at * (D. Kan. Oct. 31, 1991) (denying defendant's request to transfer to another district where transfer would do little more than shift the inconvenience to the plaintiff).  Shifting the inconvenience to the Kansas Lenders is precisely what the Defendants are attempting to do.

The transfer factors listed in the Defendants' motion do not support a transfer.  The Defendants have not shown that the witnesses and evidence are so concentrated in Texas that a transfer would be more convenient for all parties involved compared to Kansas.[6]  All Kansas Lenders are located in Kansas.  All of their documentation, much of which will be evidence, is also located in Kansas.  There is no evidence that the Defendants would receive an unfair trial in Kansas, and the Defendants have raised no practical considerations that would make trial in Texas easier beyond the mere inconvenience associated with travelling to Kansas.  Granted, the presence of a Texas choice-of-law provision favors transfer, but not nearly enough to outweigh

---

[6] The Kansas Lenders assert that non-party witnesses will ***not*** be necessary for a resolution of this contract dispute.

the factors that favor no transfer, including the most important factor, the Kansas Lenders' choice of Kansas as the forum.  No Texas statutes are involved; instead this is a standard breach of contract case, and Defendants have not shown that a Kansas court will have any trouble applying Texas contract law.

The balance of the factors is not, as it must be to sustain a transfer, "strongly in favor of the movant." *Scheidt*, 956 F.2d at 965.  The Defendants will get an easy, expeditious, and economical trial right here in Kansas.  The Defendants' alternative motion to transfer should be denied.

## IV.   CONCLUSION.

This Court has personal jurisdiction based on the litany of the Defendants' Kansas contacts related to the Kansas Lenders' contract claims.  Venue is proper in this judicial District.  And there is no basis to transfer this case to Texas.  The Defendants' motion should be denied in its entirety.

Respectfully submitted,

*s/Jeffery A. Jordan*
James M. Armstrong, #09271
Jeffery A. Jordan, #12574
Bradley D. Serafine, #24135
FOULSTON SIEFKIN LLP
1551 N. Waterfront Parkway, Suite 100
Wichita, KS 67206-4466
316-267-6371
316-267-6345 (fax)
jarmstrong@foulston.com
jjordan@foulston.com
bserafine@foulston.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2010, I electronically filed the foregoing memorandum with the clerk of the court by using the CM/ECF system which will provide service to the following:

Charles E. Millsap, #9692                    cmillsap@fleeson.com
FLEESON, GOOING, COULSON
  & KITCH, L.L.C.
1900 EPIC Center
301 N. Main
Wichita, KS 67202
*Attorney for Defendants*

*s/Jeffery A. Jordan*
Jeffery A. Jordan, #12574