IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| WILLIAM L. EDISON TRUST NUMBER<br>ONE (third restatement) U/A May 4, 2005,<br>by its Trustee WILLIAM L. EDISON;<br>WILLIAM HENSLEY; JANET WHITE;<br>CHARLES R. WHITE; and<br>McCULLOUGH DEVELOPMENT, INC., | )<br>)<br>)<br>)<br>)<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| v. | ) | No. 10-cv-01159-RDR-KGS |
| | ) | |
| R.D. (SPIKE) PATTILLO III; and<br>RUSSELL H. TRIPPET, | )<br>)<br>) | |
| Defendants. | )<br>) | |

**PLAINTIFFS' SUR-REPLY IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION AND/OR IMPROPER VENUE,
OR, IN THE ALTERNATIVE, FOR TRANSFER**

COME NOW plaintiffs and submit this Sur-Reply in further opposition to defendants' Motion to Dismiss for Lack of Personal Jurisdiction and/or Improper Venue, or, in the Alternative, to Transfer. For the reasons stated herein and in plaintiffs' Response (Doc. 9), defendants' motion should be denied.

I.   SUMMARY OF ARGUMENT.

After plaintiffs' Response pointed out the overwhelming contacts defendants had with the State of Kansas in connection with the transactions at issue in this case, defendants' Reply argued for the first time that their contacts were made while representing a corporation and should not be attributed to them for personal jurisdiction purposes. The "fiduciary shield" doctrine is argued to insulate defendants in this case from the Court's consideration of their manifold Kansas contacts because they at all times, so they say, acted solely on behalf of First

1

Bale LLC ("First Bale"), the entity created by defendants as a vehicle to complete transactions related to the real estate venture in Waco, Texas.

Yet defendants completely ignored the fact that they ***personally*** solicited plaintiffs to lend money and enter into contracts. Indeed, at the time of the initial solicitation, ***First Bale had not yet been formed***. As it turned out, the transaction as negotiated and structured by plaintiffs and defendants involved the use of an LLC ***and personal guaranties***. For defendants to say that they at all times acted on behalf of First Bale, an entity that was created after the initial solicitation for the lone purpose of completing the transaction, is disingenuous and ignores reality. It is even more disingenuous for defendants to unilaterally designate the contacts with Kansas that occurred after First Bale was created as official or representative. First Bale was a mere instrumentality used by the parties to achieve their personal financial goals.

That First Bale was nothing more than a means to an end is not just plaintiffs' theory in response to defendants' fiduciary shield argument; it comes from defendants themselves. On November 2, 2006, defendant Pattillo explained in a letter to plaintiffs that the "vehicle of choice in Texas … for projects such as ours is a limited liability company (LLC) … because of changes in the franchise tax laws made by our state legislature in this last session." [Exhibit B to plaintiff's Response (Doc. 9), at p.63]. Pattillo also stated in his letter that First Bale was created as "the single purpose entity that owns and perhaps operates The Homestead." [*Id.*]. Pattillo's statements demonstrate that defendants' focus was on completion of the transaction, not on furthering the interests of First Bale. Put simply, defendants are not eligible for protection under the fiduciary shield doctrine.

Accordingly, the Court has personal jurisdiction over the defendants for the reasons contained in plaintiffs' Response. The Kansas long-arm statute is easily satisfied by the

defendants' entry into personal guaranties in favor of Kansas residents requiring payment to be made in Kansas.  With the long-arm statute out of the way, the issue becomes one of due process.  Essentially, the question is whether it is fair to subject the defendants to jurisdiction in Kansas.  Given the abundance of contacts with Kansas, most if not all of which were personal to defendants, the answer is yes.

Finally, venue is proper in Kansas because substantial events related to the guaranties at issue in this case occurred in Kansas.

## II.   DEFENDANTS HAD SIGNIFICANT PERSONAL KANSAS CONTACTS PRIOR TO THE INCORPORATION OF FIRST BALE LLC.

According to the Texas Secretary of State, First Bale was formed by the defendants on July 25, 2006 with defendant Pattillo as its registered agent.  [*See* Exhibit A attached hereto].  It follows that any Kansas contacts that occurred *before* July 25, 2006—and there were several meaningful contacts that served as the starting point for the contractual relationship between plaintiffs and defendants at issue in this case—could simply not have been on behalf of First Bale.

Curiously, defendants failed to address the meaningful Kansas contacts that occurred before First Bale was created.  First, defendant Trippet called plaintiff Edison in the first half of 2006 to discuss a possible real estate venture whereby Edison and perhaps other Kansas lenders would loan money for development of The Homestead.  [Edison Aff. ¶ 3].  Trippet obviously acted in his personal capacity, as First Bale LLC had not yet been formed.

Second, Exhibit A to plaintiffs' Response is a 35-page informational document faxed by defendant Trippet to plaintiff Edison on June 26, 2006 soliciting Edison's financial participation in The Homestead.  It was "presented" by both defendants with the obvious goal of enticing and soliciting Edison to loan money for The Homestead.  [First Edison Aff ¶ 4 (Doc. 10)].  This was

3

not a random or fortuitous contact; it was a calculated communication sent to Kansas and intended to solicit money from Kansas residents.  Clearly, this contact was also personal, as First Bale would not be created for another month after the fax's arrival in Kansas.  These personal contacts led to the formation of contracts with Kansas residents, some of which are the subject of this lawsuit and all of which required performance in Kansas.

As established in plaintiffs' Response, soliciting money from a Kansas resident is a substantial contact in the due process analysis.  *See Serrano, Inc. v. SLM Int'l*, 1994 U.S. Dist. LEXIS 2038, at *13-14 (D. Kan. Feb. 18, 1994).  Plaintiff will not repeat its arguments found on pages 8-12 of its Response.  Synthesizing defendants' contacts, and disregarding any contacts arguably belonging to First Bale, yields the following:  a non-resident defendant reached out to a Kansas resident and solicited money for a loan, proposed to enter contracts with a Kansas resident, and enticed the Kansas resident to get other Kansas residents to loan money and enter contracts.  The loan was later consummated by the Kansas residents sending money from Kansas, in exchange for which the non-resident defendants signed personal guaranties in favor of the Kansas residents payable in Kansas.  This alone should satisfy due process.  But there is more.

III.   **MOST IF NOT ALL OF DEFENDANTS' CONTACTS AFTER CREATION OF FIRST BALE LLC IN JULY 2006 AROSE IN THEIR PERSONAL, NOT REPRESENTATIVE, CAPACITY.**

First Bale was nothing more than, to use Pattillo's term, a "vehicle" designed to achieve the personal financial objectives of the parties.  Defendants were not solely representing First Bale, as they must have been to gain the protection of the fiduciary shield doctrine.  They were representing their own interests and hoping to score a profit in the then-booming real estate market.  At best, First Bale's interests were congruent with defendants' own personal interests.

As will be shown below, the failure to act solely in the name of First Bale at all times disqualifies defendants from the fiduciary shield doctrine's safekeeping.

Defendants urge the Court to ignore the communications sent to Kansas by defendants throughout development of The Homestead (Exhibit B to plaintiffs' Response) and also the interest payments sent to Kansas (Exhibit C to plaintiffs' Response).  The suggested basis is that the communications and interest payments relate to the Note, an agreement between First Bale and plaintiffs.  Designating First Bale as the borrower on the Note was a product of the negotiations between defendants and plaintiffs, with no significance beyond tax advantages.

After July 25, 2006, defendants' contacts with Kansas were not automatically transformed from personal to representative.  Nevertheless, defendants seek the protection of the fiduciary shield doctrine[1], arguing that all of their actions were solely on behalf of First Bale and not at all driven by their own selfish motives.  The doctrine requires a distinction between "personal" activities and "representative" activities and is not nearly as expansive as defendants suggest.  To be clear, "[a] defendant's status as an officer or employee 'does not somehow insulate . . . [him] from jurisdiction.'"  *Dodson Int'l Parts, Inc. v. Altendorf*, 181 F.Supp.2d 1248, 1255 (D. Kan. 2001) (citing *Calder v. Jones*, 465 U.S. 783, 790 (1984)).

To invoke the fiduciary shield doctrine, the individual must have at all relevant times acted "solely" in his capacity as a corporate officer.  *See Caldwell-Baker Co. v. Southern Illinois*

---

[1] Although the court did not decide the issue, the District of Kansas has questioned the continued validity of the fiduciary shield doctrine.  In *First Magnus Fin. Corp. v. Star Equity Funding*, 2007 WL 635312, at *6, n.3 (D. Kan. Feb. 27, 2007), Judge Lungstrum noted "[t]his doctrine is exclusively a creation of state law, and numerous federal courts have declined to consider its applicability when the state's long-arm statute is coterminous with the full reach of due process."  *Id.* (citing *Int'l Adm'rs, Inc. v. Pettigrew*, 430 F. Supp. 2d 890, 898 (S.D. Iowa 2006)).  The Kansas long-arm statute is coterminous with the full reach of due process, placing the continued validity of the fiduciary shield doctrine in jeopardy. *See OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998) and K.S.A. § 60-308(b)(1)(L).

*Railcar Co.*, 225 F.Supp.2d 1243, 1262 (D. Kan 2002) ("An individual's actions, ***solely*** in the capacity as a corporate officer, [do] not create personal jurisdiction over that individual…") (emphasis added).  In *Caldwell-Baker*, cited by defendants, the court found application of the fiduciary shield doctrine proper because "[a]ll of the contacts plaintiffs identify arose while defendants … were acting in their official capacities as officers of [corporation]." *Id.*

Likewise, the defendant in *Kanuth v. Lutheran Church Missouri Synod*, also cited by defendants, was protected by the doctrine because his "letter and communications to residents of Kansas were made solely in his official representative capacity with the [defendant church]." 643 F. Supp. 444, 446 (D. Kan. 1986).  Unlike the *Caldwell-Baker* defendants and the *Kanuth* defendant, defendants in this case cannot prove that they ***at all times*** acted ***solely*** in their capacities as officers of First Bale.  Defendants were not acting in First Bale's name, but were acting in their own names and using First Bale to accomplish their own self-interested objectives. Defendants are simply trying to wield First Bale as a shield to avoid the jurisdiction of this Court, and their ploy should not be rewarded.

In evaluating the fairness of subjecting an individual to personal jurisdiction for acts allegedly done in his role as a corporate employee, it is appropriate to focus on the nature of the corporation and the individual's relationship to it.  *Home-Stake Prod. Co. v. Talon Petroleum*, 907 F.2d 1012, 1017 (10th Cir. 1990).  The fiduciary shield doctrine is concerned with the fairness of asserting jurisdiction over a person who is acting "solely in the interests of another." *Id.* at 1017-1018.  In determining whether a corporation for which a defendant acts is really "another," it is sufficient to inquire whether the corporation is a real or shell entity.  *Id.*  If the corporation is merely a shell, it is equitable, even if the shell may not have been used to

perpetrate a fraud, to subject its owner personally to the court's jurisdiction to defend the acts he has done on behalf of his shell.  *Id.*

There is no allegation of fraud in this case, but under *Home-Stake* there does not have to be to reach past the corporate shell.  First Bale was nothing more than a shell fashioned for completing transactions related to The Homestead.  Accordingly, it is fair to subject defendants to jurisdiction in Kansas in light of the abundant contacts detailed in plaintiffs' Response.

When, as here, the claim alleges or necessarily involves the personal interests or motives of the individual defendant, the fiduciary shield doctrine does not apply.  *Dodson Int'l Parts, Inc. v. Altendorf*, 181 F.Supp.2d 1248, 1255 (D. Kan. 2001).  In this case, plaintiffs' claim alleges and necessarily involves the personal interests or motives of the defendants.  Defendants signed personal guaranties which are the subject of this suit.  Plaintiffs claim that defendants acted in their own self interest before, during, and after development of The Homestead, such that the Court may attribute any allegedly corporate contacts to the defendants.

In *Dodson*, the plaintiff alleged that the individual defendant was a member of a conspiracy and participated in wrongdoing.  The defendant invoked the fiduciary shield doctrine. The court rejected the defendant's argument and reasoned:  "As the sole shareholder of [the corporation], the defendant obviously had a personal motive or interest in activities that profited [the corporation].  From the verified complaint, one can infer that the [defendant-individual] was the primary participant acting in furtherance of his own interests and those of [the corporation]." *Id.* at 1255.  Based on the allegation that the defendant was personally motivated or self-interested, the court held that the fiduciary shield doctrine did not insulate the individual from the court's jurisdiction.  *Id.*  Defendants were the only two officers of First Bale and clearly had

strong personal financial motives and interests in profiting from a real estate venture that included their personal solicitation of money from Kansas residents.

The fiduciary shield doctrine also does not apply when the plaintiff is not seeking to assert jurisdiction over the defendant merely by virtue of jurisdiction over his corporation. *See Ceva Labs. v. Wilson*, 1989 U.S. Dist. LEXIS 10645, at *2 (D. Kan. Aug. 21, 1989). In this case, plaintiffs are not seeking to exercise jurisdiction over defendants by asserting jurisdiction over First Bale. Plaintiffs did not name First Bale as a defendant. Plaintiffs are seeking personal jurisdiction based upon defendants' personal solicitations and subsequent contacts and contracts with Kansas residents; therefore, the fiduciary shield doctrine does not preclude the assertion of jurisdiction over defendants.

At any rate, when faced with a motion to dismiss for lack of personal jurisdiction, "[p]laintiffs bear a light burden in establishing a prima facie showing of personal jurisdiction." *Jayhawk Capital Mgmt. v. LSB Ind., Inc.*, 2009 U.S. Dist. LEXIS 105109, at *61 (D. Kan. Nov. 10, 2009). Disputed facts must be resolved in favor of the plaintiff faced with a Rule 12(b)(2) motion. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). Here, plaintiffs always understood they were dealing with defendants in their personal capacity and would not have loaned the money without the personal guaranties executed by defendants. [Edison Aff. ¶¶ 4, 6, 8]. To the extent the parties' affidavits conflict regarding the capacity of defendants when they made their Kansas contacts, the court should resolve disputes in plaintiffs' favor. *See Wenz*, 55 F.3d at 1505.

In sum, by signing personal guaranties in favor of Kansas residents and payable in Kansas, defendants agreed to be personally liable on the indebtedness of the "vehicle" created by defendants to accomplish the parties' goals, First Bale. Defendants personally solicited money

from Kansas residents; personally entered into guaranty contracts with Kansas residents requiring performance in Kansas; sent communications to Kansas throughout the development of the project; partially performed by sending payments to Kansas residents; and solicited more money from Kansas residents when the project was failing.  These actions were not taken on First Bale's behalf, but in their own personal behalf, subjecting defendants to personal jurisdiction in Kansas.

IV.     **VENUE IS PROPER IN KANSAS.**

Defendants' Reply did nothing to rebut plaintiffs' venue argument beyond asserting that no "substantial part of the events or omissions giving rise" to the plaintiffs' claims occurred in Kansas.  Plaintiffs will not repeat their arguments as to why venue is proper in Kansas in this Sur-Reply.  Many of the same activities that establish personal jurisdiction in Kansas also establish venue in Kansas.  Because a substantial part of the events or omissions giving rise to the plaintiffs' claims occurred in Kansas, venue is proper in Kansas.  As noted in plaintiffs' Response, venue can be proper in more than one forum; while Texas would be a proper forum, so too is Kansas a proper forum.

IV.     **DEFENDANTS' MOTION SHOULD BE DENIED IN ITS ENTIRETY.**

Defendants cannot claim the protections of the fiduciary shield doctrine because, as shown in this Sur-Reply, they did not at all times act solely in the name of First Bale, the "vehicle" they created to complete transactions related to The Homestead.  For the reasons contained herein and in plaintiffs' Response, defendants' motion should be denied in its entirety.

Respectfully submitted,

*s/Jeffery A. Jordan*
James M. Armstrong, #09271
Jeffery A. Jordan, #12574
Bradley D. Serafine, #24135
FOULSTON SIEFKIN LLP
1551 N. Waterfront Parkway, Suite 100
Wichita, KS 67206-4466
316-267-6371
316-267-6345 (fax)
jarmstrong@foulston.com
jjordan@foulston.com
bserafine@foulston.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2010, I electronically filed the foregoing memorandum with the clerk of the court by using the CM/ECF system which will provide service to the following:

Charles E. Millsap, #9692          cmillsap@fleeson.com
FLEESON, GOOING, COULSON
  & KITCH, L.L.C.
1900 EPIC Center
301 N. Main
Wichita, KS 67202
*Attorney for Defendants*

*s/Jeffery A. Jordan*
Jeffery A. Jordan, #12574

10

Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
FAX: 512/463-5709

Filing Fee: $300



**Certificate of Formation
Limited Liability Company**

**Filed in the Office of the
Secretary of State of Texas
Filing #: 800684736 07/25/2006
Document #: 137828660002
Image Generated Electronically
for Web Filing**

## Article 1 - Entity Name and Type

The filing entity being formed is a limited liability company. The name of the entity is:

**First Bale LLC**

The name of the entity must contain the words "Limited Liability Company" or "Limited Company," or an accepted abbreviation of such terms. The name must not be the same as, deceptively similar to or similar to that of an existing corporate, limited liability company, or limited partnership name on file with the secretary of state. A preliminary check for "name availability" is recommended.

## Article 2 – Registered Agent and Registered Office

☐ A. The initial registered agent is an organization (cannot be company named above) by the name of:

### OR

☑ B. The initial registered agent is an individual resident of the state whose name is set forth below:

**Name:**
**R. D. (Spike) Pattillo III**

C. The business address of the registered agent and the registered office address is:

**Street Address:**
**7901 Fish Pond Road
Second Floor  Waco  TX  76710**

## Article 3 - Governing Authority

☑ A. The limited liability company is to be managed by managers.

### OR

☐ B. The limited liability company will not have managers. Management of the company is reserved to the members.

The names and addresses of the governing persons are set forth below:

Manager 1: **R. D.  (Spike) Pattillo III**                Title: **Manager**

Address: **PO Box 20773   Waco  TX, USA  76702**

Manager 2: **Russell  H.  Trippet**                Title: **Manager**

Address: **PO Box 7633   Waco  TX, USA  76714**

## Article 4 - Purpose

The purpose for which the company is organized is for the transaction of any and all lawful business for which limited liability companies may be organized under the Texas Business Organizations Code.

## Supplemental Provisions / Information

A

[The attached addendum, if any, is incorporated herein by reference.]

### Organizer

The name and address of the organizer are set forth below.

**R. D. (Spike) Pattillo III**      **PO Box 20773, Waco, TX 76702**

### Effectiveness of Filing

☑ A. This document becomes effective when the document is filed by the secretary of state.

**OR**

☐ B. This document becomes effective at a later date, which is not more than ninety (90) days from the date of its signing. The delayed effective date is:

### Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument.

**R. D. (Spike) Pattillo III**

Signature of Organizer

**FILING OFFICE COPY**