# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

WILLIAM A. EDISON
TRUST NUMBER ONE, et al.,

        Plaintiffs,

    vs.                   **Case No. 10-1159-RDR**

R. D. PATTILLO III and
RUSSELL H. TRIPPET,

        Defendants.

---

## MEMORANDUM AND ORDER

This matter is presently before the court upon defendants' motion to dismiss for lack of personal jurisdiction and/or improper venue or, in the alternative, for transfer. Having carefully reviewed the arguments of the parties, the court is now prepared to rule.

### I.

This is a breach of contract action. Plaintiffs, Kansas residents, provided $800,000 for a senior housing development in Waco, Texas. The monies were loaned to First Bale, LLC, a Texas corporation. Defendants R.D. (Spike) Pattillo III and Russell H. Trippet, Texas residents, were the principal members of First Bale. A promissory note was executed by First Bale in favor of the plaintiffs. Plaintiffs were to receive interest payments and equity in First Bale. Defendants each signed personal guaranties for the loan. The project eventually failed. Plaintiffs brought

an action in Kansas state court against the defendants based upon the personal guaranties. The matter was then removed to this court based upon diversity jurisdiction.

II.

"The standard that governs a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction is well established: 'The plaintiff bears the burden of establishing personal jurisdiction over the defendant.'" Hudye Soil Services, Inc. v. Tyler, 46 F.Supp.2d 1157, 1161 (D.Kan.1999) (quoting Behagen v. Amateur Basketball Ass'n, 744 F.2d 731, 733 (10th Cir. 1984), cert. denied, 471 U.S. 1010 (1985) (citations omitted)). See also Dudnikov v. Chalk & Vermillion Fine Arts, Inc., 514 F.3d 1063, 1069 (10th Cir. 2008).

The extent of the plaintiff's burden depends in part on the way the trial court handles the motion to dismiss for lack of personal jurisdiction. The trial court can proceed in several ways including (1) reference to only the complaint and affidavits, (2) a pre-trial evidentiary hearing, or (3) sometimes at trial itself. Dudnikov, 514 F.3d at 1069. When the trial court decides the jurisdictional issue as the result of an evidentiary hearing or at trial, the plaintiff must generally establish that personal jurisdiction exists by a preponderance of the evidence. Id. at 1070 n. 4. However, when the motion is decided at a preliminary stage by reference to only the complaint and affidavits, the

2

plaintiff need only make a prima facie showing of personal jurisdiction. Id. at 1070.

The parties have provided the court with substantial information concerning the background of this case. They have submitted affidavits and exhibits. Neither side has requested an evidentiary hearing and the court does not see the need for one. Accordingly, plaintiffs need only make a prima facie showing of personal jurisdiction. The plaintiff may carry this burden "by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd., 488 F.3d 1282, 1286 (10th Cir. 2007) (internal quotation marks omitted). "All factual disputes are resolved in favor of the plaintiff[ ] when determining the sufficiency of this showing." Rusakiewicz v. Lowe, 556 F.3d 1095, 1100 (10th Cir. 2009). "[T]o defeat a prima facie showing of jurisdiction, the defendant must demonstrate that the presence of some other considerations would render jurisdiction unreasonable." TH Agric. & Nutrition, 488 F.3d at 1286 (internal quotation marks omitted).

## III.

In 2006, defendant Trippet, on behalf of himself and defendant Pattillo, contacted William Edison about the possibility of investing in a senior housing development in Waco, Texas called "The Homestead." Edison was located in Wichita, Kansas. Pattillo

and Trippet were in Waco. Trippet knew Edison from prior professional relationships including a partnership between Trippet and Edison on another unrelated property in Waco. Trippet knew that Edison had successfully gathered investors for other real estate projects. Trippet initiated the conversation in hopes that Edison could gather other Kansas lenders to finance The Homestead. A number of telephone calls, e-mails and letters were subsequently exchanged between Edison in Kansas and Trippet and Pattillo in Texas.

In June 2006, Trippet faxed a 35-page informational document entitled "The Homestead" to Edison in Kansas. The document, which featured plans, drawings, budgets, photos, and comparable properties, was intended to educate and solicit Edison's financial participation in the project. On July 25, 2006, a certificate of formation for First Bale, LLC was filed with the Texas Secretary of State by Pattillo. Trippet and Pattillo were designated as the managers of First Bale, LLC. Pattillo was designated as its registered agent. First Bale was formed as a vehicle to own and operate The Homestead.

Pattillo and Trippet continued to communicate with Edison about his and the other Kansas lenders' involvement with The Homestead. These communications were made from Waco to Edison in Kansas. Eventually, four Kansas lenders agreed to loan $800,000 to First Bale in exchange for a 20% ownership interest. Pattillo and

Trippet would also execute personal guaranties for the loan.

On January 18, 2007, First Bale executed a real estate lien note in favor of William L. Edison Trust Number One (third restatement) U/A May 4, 2005; William Hensley; Janet and/or Charles R. White; and McCullough Development, Inc. (the Kansas lenders). The note was signed by Pattillo as President of First Bale. In the note, First Bale promised to pay plaintiffs a principal sum of $800,000 plus interest at 9% per annum. The note expressly provided that the place of payment was Edison Investments in Wichita, Kansas. The note also provided as follows: "The laws of State of Texas shall govern this Note and it shall be enforceable, payable and collectible in Waco, McLennan County, Texas." Also, on January 18, 2007, First Bale executed a deed of trust for the real property and improvements upon which The Homestead was to be constructed in favor of the Kansas lenders as security for the note. Finally, on that date, Pattillo and Trippet each signed a personal guaranty in favor of the Kansas lenders to guarantee payment of the note. In the guaranties, Pattillo and Trippet agreed to pay the guaranteed indebtedness, when due or declared due, at the lender's mailing address which was specifically identified as Wichita, Kansas. The guaranties also provided that they were to be "construed under the laws of the state of Texas without regard to choice-of-law rules of any jurisdiction."

From January 2007 to January 2009, First Bale sent at least 14

interest payments of $1,500 to each of the Kansas lenders. Thereafter, Trippet and Pattillo sought additional monies from the Kansas lenders to salvage the project when it became apparent that The Homestead units were not leasing rapidly enough. Eventually, on November 3, 2009, the senior lender in the project, Central National Bank, foreclosed its mortgage on the property and improvements of The Homestead. In the instant case, plaintiffs contend that First Bale is in default on the note. They seek payment of the amounts due under the note based upon the personal guaranties of Pattillo and Trippet.

IV.

The defendants rely upon the following facts in support of their motion to dismiss: (1) they are residents of Texas, not Kansas; (2) they have not traveled to Kansas; (3) they have no place of business in Kansas; (4) they have had no purposeful contacts with Kansas; (5) the subject of the loan and the guaranties was a project in Texas; (6) they executed the guaranties in Texas; (7) the fiduciary shield doctrine protects them because most of the contacts they made were made on behalf of First Bale, who is not a party to this action; and (8) the loan to First Bale was "enforceable, payable and collectible in Waco, McLennan County, Texas."

Plaintiffs suggest that personal jurisdiction is present in Kansas based upon the following facts: (1) multiple communications

prior to the signing of the guaranties between Edison in Kansas and the defendants in Texas pursuant to e-mails, letters and telephone calls; (2) Trippet faxed a 35-page document to Edison in Kansas that was intended to solicit and entice financial participation in the project; (3) pursuant to the solicitations from the defendants, the Kansas lenders sent an $800,000 loan payment to Texas; (4) the defendants each signed a note on behalf of First Bale that provided for payments to be made to an address in Kansas; (5) the defendants each signed a guaranty that provided for payments to be made to Kansas; (6) First Bale sent at least 14 interest payments to the Kansas lenders in Kansas; (7) the defendants solicited more money from the Kansas lenders when it became apparent the project would not be successful; and (8) the fiduciary shield doctrine does not apply because the defendants were acting in furtherance of their own interests and First Bale was merely a shell to enable the completion of the project.

V.

To obtain personal jurisdiction over nonresident defendants in a diversity action, "a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." <u>Pro Axess, Inc. v. Orlux Distrib., Inc.</u>, 428 F.3d 1270, 1276 (10th Cir. 2005) (citation omitted). "Because the Kansas long-arm statute is construed liberally so as to allow

jurisdiction to the full extent permitted by due process, we proceed directly to the constitutional issue. <u>OMI Holdings, Inc. v. Royal Ins. Co. Of Canada</u>, 149 F.3d 1086, 1090 (10th Cir. 1998).

The due process analysis consists of two steps. First, we consider "whether the defendant has such minimum contacts with the forum state 'that he should reasonably anticipate being haled into court there.'" <u>OMI Holdings</u>, 149 F.3d at 1091 (quoting <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980)). This minimum-contacts standard may be satisfied by showing general or specific jurisdiction. <u>See</u> <u>id</u>. Plaintiffs do not assert that the court may exercise general jurisdiction over the defendants based on their "continuous and systematic general business contacts" with the forum state. <u>See</u> <u>Helicopteros Nacionales de Colombia v. Hall</u>, 466 U.S. 408, 415 (1984). Therefore, the court need only consider whether the exercise of specific personal jurisdiction over each of the defendants would offend due process. Second, if a defendant has minimum contacts within the forum state, the court determines "whether the exercise of personal jurisdiction over [a] defendant offends 'traditional notions of fair play and substantial justice.'" <u>OMI Holdings</u>, 149 F.3d at 1091 (quoting <u>Asahi Metal Indus. Co. v. Super. Ct. of Calif.</u>, 480 U.S. 102, 105 (1987) (plurality opinion)). This analysis is fact specific. <u>TH Agric. & Nutrition</u>, 488 F.3d at 1287, 1292.

8

A.

**Minimum Contacts**

Under the specific-jurisdiction requirement, a plaintiff satisfies the minimum-contacts standard by showing that (1) the defendant has "purposefully availed itself of the privilege of conducting activities or consummating a transaction in the forum state," <u>Dudnikov</u>, 514 F.3d at 1071 (emphasis omitted) (internal quotation marks omitted); and (2) "'the litigation results from alleged injuries that arise out of or relate to those activities.'" <u>TH Agric. & Nutrition</u>, 488 F.3d at 1287 (quoting <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 472 (1985)).

"Purposeful availment requires actions by the Defendant which create a substantial connection with the forum state." <u>OMI Holdings</u>, 149 F.3d at 1092 (internal quotation marks omitted). "[W]e must examine the quantity and quality of Defendant's contacts with [the forum state]. . . ." <u>Id.</u>(second emphasis omitted). The purpose of this requirement is to "ensure[ ] that a defendant will not be subject to the laws of a jurisdiction solely as the result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." <u>AST Sports Sci., Inc. v. CLF Dist. Ltd.</u>, 514 F.3d 1054, 1058 (10th Cir. 2008) (internal quotation marks omitted).

The court begins by acknowledging that the defendants are residents of Texas and did not travel to Kansas during any of the

period relevant to the senior housing development. Of course, a defendant need not be physically present in the forum state to be subject to personal jurisdiction there. <u>Calder v. Jones</u>, 465 U.S. 783, 789 (1984). Rather, the court will look carefully at other evidence, including telephone or electronic communication, to establish personal jurisdiction when a defendant has not been physically present in the forum state because it serves as evidence that the defendant reached into the forum. See <u>AST Sports Sci.</u>, 514 F.3d at 1059.

The defendants have suggested that "[n]othing in the contracts at issue required [them] to perform any of their obligations in Kansas" and the "mere fact that [they] may have mailed a check from Texas to Kansas is insufficient to subject them to personal jurisdiction in Kansas." The defendants have also suggested that the fiduciary shield doctrine prohibits the exercise of personal jurisdiction over them because they were agents of a non-resident corporation transacting business in the forum state on behalf of the corporation.

The record before the court shows that the defendants were required to perform part of their obligations in Kansas. The notes and guaranties signed by the defendants required the defendants to make payments into Kansas. Such actions constitute performance of the contracts in Kansas. See <u>Rusty Eck Ford-Mercury Corp. v. Am. Custom Coachworks, Ltd.</u>, 184 F.Supp.2d 1138, 1142 (D.Kan. 2002).

Here, the defendants, through First Bale, did send at least 14 interest payments to Kansas. While partial payment is not sufficient by itself to establish personal jurisdiction, it is indeed a factor to consider. Benton v. Cameco Corp., 375 F.3d 1070, 1076-77 (10th Cir. 2004), cert. denied, 544 U.S. 974 (2005); Continental Am. Corp. v. Camera Controls Corp., 692 F.2d 1309, 1314 (10th Cir. 1982).

The court next turns to the communications that were made between Edison in Kansas and the defendants in Texas. "It is well established that phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts." Far West Capital, Inc. v. Towne, 46 F.3d 1071, 1077 (10th Cir. 1995). However, "[i]n proper circumstances, even a single letter or telephone call to the forum state may meet due process standards." Rambo v. Am. S. Ins., Co., 839 F.2d 1415, 1418 (10th Cir. 1988). "[T]he exercise of jurisdiction depends on the nature of those contacts." Id. (emphasis in original). "Purposeful availment analysis turns upon whether the defendant's contacts are attributable to his own actions or solely to the actions of the plaintiff. . . . [and generally] requires . . . affirmative conduct by the defendant which allows or promotes the transaction of business within the forum state." Id. at 1420 (citation omitted). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of

'random,' 'fortuitous,' or 'attenuated' contacts." <u>Burger King</u>, 471 U.S. at 475 (citations omitted).

The record shows that the defendants initiated a discussion with a Kansas resident about the possibility of a loan for a senior housing development in Texas. The defendants communicated with Edison in Kansas through numerous telephone calls, e-mails and letters. Many of these communications occurred prior to the formation of First Bale. The communications led to the loan of $800,000 by the Kansas lenders and then to the signing of the notes and guaranties. The notes and guaranties provided for payment to be made to Kansas. First Bale then sent at least fourteen interest payments to the Kansas lenders. As problems arose with The Homestead, the defendants made additional communications with the Kansas lenders in an effort to salvage the project.

Here, the actions of the defendants were instrumental in the formation of the contracts with the Kansas lenders. "[P]arties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." <u>Burger King</u>, 471 U.S. at 473 (quoting <u>Travelers Health Assn. v. Virginia</u>, 339 U.S. 643, 647 (1950)).

The court must next consider the application of the fiduciary shield doctrine. In general, the fiduciary shield doctrine provides that "jurisdiction over individual officers of a

corporation must be based on their personal, not representative, contacts with the forum." Caldwell-Baker Co. v. Southern Ill. Railcar Co., 225 F.Supp. 2d 1243, 1262 (D.Kan. 2002). "The policy interest served by the fiduciary shield doctrine is 'to prevent the unfairness of an individual being forced to defend a suit in a forum when his only contacts there were made for the benefit of his employer and not himself.'" Id.(quoting Traffas v. Bridge Capital Corp., 1990 U.S.Dist.LEXIS 17818, at *12 (D.Kan. 12/3/90)). However, "[a] defendant's status as an officer or employee 'does not somehow insulate . . .[him] from jurisdiction.'" Dodson Intern. Parts, Inc. v. Altendorf, 181 F.Supp.2d 1248, 1255 (D.Kan. 2001) (quoting Calder, 465 U.S. at 790). "When the claim alleges or necessarily involves the personal interests or motives of the individual defendant, the fiduciary shield doctrine does not apply." Id.

As previously noted, the defendants here actively sought a loan from Edison and others in Kansas for the project in Texas. They sent substantial materials in support of their request. Following these communications, the defendants formed First Bale as the entity to own and operate the senior housing development. The defendants were the only members of First Bale. Thus, the defendants' efforts were designed solely for their own benefit, not for a separate corporation. As the members of First Bale, they continued in their efforts to obtain the loan and then sign the

necessary personal guaranties. Under these circumstances, we do not find that the fiduciary shield doctrine should be applied here. The court believes that it is appropriate to consider the personal acts of the defendants as well as their specific acts done in this forum on First Bale's behalf due to the identical economic interests of the defendants and First Bale.

This court's decision is in accord with the decisions of other courts who were faced with similar circumstances. <u>Mellon Bank (East) PSFS, Nat. Ass'n v. Farino</u>, 960 F.2d 1217, 1225 (3rd Cir. 1992) (personal guarantees of corporate debt without much more may be sufficient to subject shareholders of a closely held corporation to personal jurisdiction); <u>National Can Corp. v. K Beverage Co.</u>, 674 F.2d 1134, 1138 (6th Cir. 1982) (non-resident guarantor subject to personal jurisdiction in forum state where she had marital interest in company's stock who received benefits); <u>Marathon Metallic Bldg. Co. v. Mountain Empire Const. Co.</u>, 653 F.2d 921, 923 (5th Cir. 1981) (personal jurisdiction existed over corporate officer and shareholder who had mailed a continuing guaranty into the forum in order to induce plaintiff to extend credit to his company); <u>Forsythe v. Overmyer</u>, 576 F.2d 779, 783-84 (9th Cir.), <u>cert. denied</u>, 439 U.S. 864 (1978) (recognizing personal jurisdiction over a nonresident guarantor with strong personal interest in the underlying contract between his company and the plaintiff); <u>ELA Medical, Inc. v. Advanced Cardiac Consultants,</u>

Inc., 2010 WL 2243435, at *3 (D.Minn. 2010) (non-resident individual guarantors of corporate debt were subject to personal jurisdiction in forum state where they were primary beneficiaries of business transactions); Western Franklin Mills Corp. v. FMG, Inc., 1991 WL 126747, at * 5 (E.D.Pa. 1991) (personal jurisdiction over non-resident guarantors because there was substantive economic identity of interests between guarantors and the corporation); Kimball International Inc. v. Warmack, 1989 WL 432179, at *5-7 (S.D.Ind. March 22, 1989) (non-resident guarantors subject to personal jurisdiction where they owned stock in company benefitting from the guaranty and guaranty was given expressly to obtain extension of credit for company); Autrey v. UAP/GA AG Chem, Inc., 230 Ga.App. 767, 497 S.E.2d 402 (1998) (Florida defendant, who was president and shareholder of corporation and who executed personal guaranty for delinquent debts of corporation, was subject to personal jurisdiction in Georgia).

The court finds that the actions of the defendants constitute the necessary minimum contacts with the State of Kansas for the exercise of personal jurisdiction. The defendants were in contact with the Kansas lenders throughout the financing and building of this project. The defendants' contacts were not incidental or accidental. Rather, they were purposeful and affirmative.

There is also little question that plaintiffs' injuries arise out of or relate to forum activities. In reaching this

determination, the court has considered "whether the plaintiff[s]' claim arises out of or results from 'actions by the defendant *himself* that create a substantial connection with the forum state.'" <u>OMI Holdings</u>, 149 F.3d at 1091 (quoting <u>Asahi Metal</u>, 480 U.S. at 109). As noted several times, the defendants' contact with Kansas arose when they contacted Edison and sought the assistance of a loan for a project in Texas. Thus, plaintiffs' claims arise out of the defendants' contact with Kansas.

B.

**Traditional Notions of Fair Play and Substantial Justice**

Having found that plaintiffs have made a prima facie showing of minimum contacts, the court must turn to the next requirement for the exercise of specific jurisdiction. If the defendant has minimum contacts with the forum state, "we must still determine whether exercising personal jurisdiction would offend traditional notions of fair play and substantial justice." <u>AST Sports Sci.</u>, 514 F.3d at 1061 (internal quotation marks omitted). The court must consider whether the "exercise of personal jurisdiction . . . is reasonable in light of the circumstances surrounding the case." <u>Id</u>. (internal quotation marks omitted).

This reasonableness analysis requires the weighing of five factors:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in

> obtaining the most efficient resolution of controversies,
> and (5) the shared interest of the several states in
> furthering fundamental social policies.

Pro Axess, 428 F.3d at 1279-80 (internal quotation marks omitted).

"In assessing the reasonableness of jurisdiction, we also take into account the strength of a defendant's minimum contacts." TH Agric. & Nutrition, 488 F.3d at 1292. "[T]he reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction." Id. (brackets omitted) (internal quotation marks omitted).

Having reviewed all of the factors and arguments of the parties, the court is not persuaded that the defendants have shown that the exercise of jurisdiction here would offend the traditional notions of fair play and substantial justice. The defendants have not persuasively argued that the litigation of this action here would be a substantial burden on them. The alleged acts of the defendants caused foreseeable economic injuries to the Kansas lenders. Kansas has an important interest in providing a forum in which their residents can seek redress for injuries caused by non-resident actors. The contract dispute can be efficiently resolved in Kansas. The court can easily apply Texas law to the facts of this case. There is no indication that a resolution of this claim in Kansas will have any effect on Texas' state social policies.

The court finds it necessary to address one other issue raised

by the defendants. The defendants have suggested that the provisions in the notes that they are governed by Texas law and they are "enforceable, payable and collectible in Waco, McLennan County, Texas" are an indication that this court lacks personal jurisdiction over them. We must disagree. A choice of law provision in a contract is not the deciding factor in determining personal jurisdiction. <u>Burger King</u>, 471 U.S. at 478. Rather, it is simply an important factor to consider in determining whether a defendant purposefully established minimum contacts within the forum state. <u>Id</u>. This is undoubtedly a factor that weighs in favor of the defendants. However, when considered in light of the other circumstances noted above, the court is not persuaded that it militates against personal jurisdiction in this court. <u>See</u> <u>TH Agric. & Nutrition</u>, 488 F.3d at 1294 (concluding factor does not weigh in favor of either party when plaintiff was forum state resident but dispute was governed by Dutch law). Moreover, the court is not persuaded that the language contained in the notes amounts to a consent to personal jurisdiction in Texas. The language only indicates that jurisdiction in Texas is appropriate. There is no indication that jurisdiction is limited to that location. As correctly pointed out by the plaintiffs, the defendants "could have negotiated a forum selection clause naming Texas as the exclusive forum for dispute resolution, but they did not."

In sum, the court finds that the plaintiffs have made a threshold showing that the defendants have sufficient ties with Kansas as to permit the constitutional exercise of personal jurisdiction over them.

VI.

The defendants have argued that this action should be dismissed because the District of Kansas is not the proper venue. The defendants contend that venue is not proper under 28 U.S.C. § 1391(a)(2) because no act or omission occurred in Kansas. Specifically, they assert that the alleged claim in this case, the failure to make a payment, occurred in Texas where they are located.

The applicable venue statute, 28 U.S.C. § 1391(a), provides as follows:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

The defendants are correct that subsections (1) and (3) do not support venue in this district. Venue is proper in the District of Kansas if a substantial part of the events giving rise to the claim occurred here. See Merchants Nat'l Bank v. Safrabank, 776 F.Supp.

538, 541 (D.Kan. 1991).

The court finds that venue is appropriate here. There is little question that a substantial part of the events giving rise to the claim occurred here. The defendants pursued the Kansas lenders and then negotiated with them through communications to Kansas. Moreover, the law is well-settled that venue is proper where payments under a contract are allegedly due. See, e.g., Sea Tow Services Intern., Inc. v. Pontin, 472 F.Supp.2d 349, 364-65 (E.D.N.Y. 2007) (venue is proper in contract action where defendants had to mail payments to forum state); Ramada Worldwide, Inc. V. AB Associates Midland Management, 2008 WL 840137, at * 4 n. 8 (M.D.Fla. 2008) (venue is appropriate where payments under a contract are due); D'Ancona & Pflaum, LLC v. M2 Software, Inc., 2001 WL 873021, at *1 (N.D.Ill. 8/2/2001) ("Failure to make payment in a district pursuant to a contract is enough under the statute to establish venue in that district."). Here, the guaranties specifically provided for payment in Kansas. Thus, the court finds no merit to this aspect of the defendants' motion.

## VII.

Finally, defendants contend that the court should transfer this action to the Western District of Texas pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division

where it might have been brought."

The party seeking the transfer carries the burden of showing that the action should be transferred. <u>Ammon v. Kaplow</u>, 468 F.Supp. 1304, 1313 (D.Kan. 1979). Plaintiffs' choice of forum is entitled to great weight and should not be disturbed unless the balance of considerations strongly favors the moving party. <u>Triple A Partnership v. MPL Communications, Inc.</u>, 629 F.Supp. 1520, 1526 (D.Kan. 1986). The decision whether to grant a party's transfer motion is within the sound discretion of this court. <u>Id</u>.

Upon consideration of the parties' arguments, the court finds that defendants have failed to meet their burden in showing that transfer is warranted under 28 U.S.C. § 1404(a). Although transfer to Texas may be more convenient for defendants, such action would merely shift the burden of inconvenience from one party to another; transfer is not warranted on such a basis alone. <u>Ammon</u>, 468 F.Supp. at 1313. Because defendants' reasons do not weigh strongly enough to justify disturbing plaintiffs' choice of forum, defendants' motion to transfer will be denied.

**IT IS THEREFORE ORDERED** that defendants' motion to dismiss for lack of personal jurisdiction and/or improper venue or, in the alternative, for transfer (Doc. # 7) be hereby denied.

**IT IS SO ORDERED.**

Dated this 8th day of December, 2010 at Topeka, Kansas.

s/Richard D. Rogers

United States District Judge